## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**

**RONALD HENDERSON, also known as**
**RON HENDERSON, BRETT J. HENDERSON,**
**DANIEL WILTZ, KRISTA NESBIT, ET AL**          **NO. 08-29-C**


### RULING ON MOTIONS

Before the Court are the Defendants' Krista Nesbit and Daniel Wiltz's Motions in Limine to Exclude Testimonial Hearsay Statements of Alleged Co-Conspirators (Doc. Nos. 53 and 60) and Motions to Dismiss Count Three of the Indictments (Doc. Nos. 55 and 65). The defendants, Ronald Henderson ("R. Henderson") and Brett Henderson ("B. Henderson") along with Krista Nesbit ("Nesbit") and Daniel Wiltz ("Wiltz") filed motions to adopt any and all motions filed by any and all defendants in this matter as they relate to them. Each defendant filed a Motion to Sever (Doc Nos. 56, 63, 66, and 71). Nesbit also filed a Supplemental Motion to Sever (Doc. No. 117), on July 7, 2010. The government has filed responses to these pending motions.

Doc#1877

## BACKGROUND

Nesbit, Wiltz, R. Henderson and B. Henderson  are four of five individuals charged in a twelve count indictment.  The government alleges in the indictment that R. Henderson and B. Henderson along with other defendants defrauded Hartford Insurance Company of claims paid as a result of a fire at a building leased by American Wholesale Furniture ("AWF"). The charges set forth in the indictment are as follows:

1) in Counts One and Two, R. Henderson and B. Henderson had a role in deliberately causing the fire by some manner or means;
2) in Count Three, the defendants  Wiltz,  Nesbit, R. Henderson and B. Henderson conspired to use the mail and interstate wire transmission in a scheme to defraud the Hartford Insurance Company of insurance proceeds which co-defendant  Wiltz was not entitled to receive;
3) in Counts Four and Five, R. Henderson and B. Henderson committed mail fraud during the insurance claim process;
4) in Count Six,  R. Henderson and B. Henderson committed wire fraud during the insurance claim process;
5) in Count Eight,  Wiltz in charged with making a false statement;
6)  in Count Nine, R. Henderson is charged with making a false statement;
7)  in Count Ten, R. Henderson is charged with making a false statement;
8)  in Count Eleven, R. Henderson is charged with making a false statement; and
9) in Count Twelve, B. Henderson is charged with making a false statement under oath.

## A.  Motion in Limine to Exclude Testimonial Hearsay Statements of Alleged Co-conspirators

The Motions in Limine to Exclude Testimonial Hearsay Statements of Alleged Co-conspirators filed by defendants Nesbit and Wiltz (Doc. Nos.53 and 60) and

Doc#1877                                            2

adopted by defendants Ronald Henderson (Doc. No. 69) and Brett Henderson (Doc. No. 62), contend that the indictment clearly contemplates the admission of hearsay evidence of statements made by their co-defendants under circumstances wherein they have no opportunity to cross-examine.  Nesbit and Wiltz specifically point to the statements by Charles Glover to Agent Gahn and/or to the grand jury and/or to federal prosecutors (Count 7); statements by Wiltz to Agent Gahn and/or to federal prosecutors; statements made by R. Henderson to Agent Gahn (Count 9 and 10); and statements of R. Henderson regarding disability benefits (count 11); statements made by B. Henderson during a bankruptcy proceeding (count 12); and statements made by various parties in examinations under oath in connection with a lawsuit against Hartford (Count 3, overt acts h, I, and j).   Nesbit and Wiltz assert that they have no reason to believe any of the co-defendants will testify at trial and, therefore, any admission of such statements would violate their right to confrontation under **Crawford v. Washington,** 541 U.S. 36, 124 S.Ct. 1354 (2004), and the Sixth Amendment of the United States Constitution.

Nesbit and Wiltz contend that the statements to Agent Gahn or to prosecutors or the grand jury, and statements given under oath during the examination under oath, clearly fit the definition of testimonial statements under **Crawford,** and thus, should not be admissible against them.  In opposition, the Government asserts that this motion lacks merit because the statements in question do not violate the Confrontation Clause.   The Government asserts that it does not anticipate

introducing the statements in Counts 7, 8, 9, 10, 11 and 12 as substantive evidence against the defendants. However, the Governments indicates that the statements of Wiltz, R. Henderson, B. Henderson and Nesbit made during examinations under oath conducted by Hartford representatives on February 6, 2007 and  February 8, 2007 where conducted to determine whether and to what extent Hartford would pay the insurance claim of AWF.  Count Three of the indictment alleges the conspiracy to commit mail fraud and wire fraud based on the statements made with regard to the payment of the insurance claim. The Government asserts that it may use these statements as substantive evidence against the defendants.

The Government also argues that none of the statements listed by defendant are subject to exclusion under **Crawford**.  Under **Crawford**, ex parte testimonial statements, which may include affidavits, custodial examinations, prior testimony that the defendant was unable to cross examine, or police interrogations,[1] are categorically inadmissible.[2]  The Government asserts that the common thread running through all of these statements is the fact that the Government alleges the statements to be false, and thus does not, at this time, anticipate offering these statements to prove the truth of the matter asserted but to show the defendants made criminally false statements.  The Government further alleges that since these

---

[1] **Crawford v. Washington,** 541 U.S. 36, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004)

[2] Id. at 1374.

statements are not offered for the truth of the matter asserted, the statements are not barred by **Crawford**, even if testimonial. The court agrees.

"The [Confrontation Clause ... does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[3] Assuming that the statements in question are testimonial, the government clearly points out that these statements will not be offered to prove the truth of the matter asserted, but to show the defendants made criminally false statements. Thus, the court does not find that the non-hearsay use of the defendants' statements poses any Confrontation Clause concerns.

With regard to Count 3, the government asserts that the statements made during the Hartford examination were made in the furtherance of the of the conspiracy and are admissible substantively under Federal Rule of Evidence 801(d)(2)(E). "[A] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."[4] Assuming that the statements made under oath to the Hartford representative were made by co-conspirators in the furtherance of a conspiracy, they do not fall within the ambit of **Crawford's** protection and should not be excluded. The motion in limine lacks merit.

_____

[3] See **Crawford**, 124 S.Ct. at 1379, fn. 9.(citing **Tennessee v. Street,** 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)).

[4] Fed. R. of Evid. 801(d)(2)(E).

## B. Motions to Dismiss Count Three

Motions to Dismiss Count Three filed by defendants Nesbit (Doc. No.55 ) and Wiltz (Doc. No. 65 ) were adopted by defendants R. Henderson (Doc. No.69) and B. Henderson (Doc. No.62).  Wiltz also adopted Nesbit's Memorandum in Support. Through their motions, Nesbit and Wiltz contend that this court should dismiss Count Three against them as a violation of the McCarran-Ferguson Act and as an unwarranted incursion by the federal government into matters regulated by state law.

Title 15 U.S.C. § 1012(b), the McCarran-Ferguson Act provides, in pertinent part, as follows:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the  business of insurance: ....

Specifically, NESBIT contends that Louisiana has enacted criminal prohibitions against fraudulent conduct on the part of insureds as part of its Insurance Code in Title 22 of the Louisiana Revised Statutes, rather than as a part of its general criminal statutory scheme.  Nesbit asserts that the Louisiana Insurance Code specifically defines "fraudulent insurance act" as separate from theft or other types of fraud addressed in ordinary criminal statutes.

LSA-R.S. 22:1242 provides, in pertinent part, as follows:

> (1) "Fraudulent insurance act" shall include but not be limited to acts or omissions committed by any person who, knowingly, and with intent to defraud:

(a) presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by an insurer...or any agent thereof, any oral or written statement which he knows to contain materially false information as part of, in support of, or denial of, or concerning any fact material to or conceals any information concerning any fact material to the following:

******

(iii) a claim for payment or benefit pursuant to any insurance policy.

Nesbit contends that this definition, appearing explicitly as a part of the Louisiana insurance regulatory scheme, is the exact category of conduct alleged in the indictment in this case.   Nesbit further contends that it is inescapably clear the Louisiana legislature has decided to treat purported fraudulent schemes by insureds, such as the one alleged in this case, as part of the Louisiana insurance regulatory scheme.  The indictment in this case, therefore, is clearly a usurpation of the role of Louisiana state regulatory authority.  Wiltz also argues that McCarran-Ferguson excludes federal jurisdiction over conduct of the insured as well as the insurer if the state scheme so provides.

Assuming that Nesbit and Wiltz's activities did constitute the "business of insurance," this Court still has subject matter jurisdiction over this matter.  The court does not find that the indictment of these defendants impairs, invalidates, or supersedes any state law enacted to regulate the business of insurance.  "Section 2(b) of the Act applies only to those federal statutes that conflict with state insurance

regulation."[5]   The government charged the defendants with conspiracy to commit mail and wire fraud.  The mail fraud statute is based on Congress' power to regulate the use of the mails, a power which it had no intention of surrendering when it passed McCarran-Ferguson.[6]   Thus, the court does not find the defendants' argument to be persuasive.[7]

## C. Motion to Sever

Each defendant has filed a Motion to Sever (Doc. Nos. 56, 66, 71 and 63). Nesbit also filed a Supplemental Motion to Sever (Doc. No. 117).  The defendants each move to sever their respective charges from each other.  Nesbit moves to sever her case from the defendants on the basis that Counts Seven, Eight, Eleven,

---

[5] **United States v. Cavin**, 39 F.3d 1299, 1305 (5th Cir. 1994) (citing See **U.S. Department of Treasury v. Fabe,** 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993) (distinguishing **SEC v. National Securities, Inc.,** 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)).

[6] See **United States v. Sylvanus,** 192 F.2d 96, 100 (7th Cir. 1951), cert. denied, 342 U.S. 943, 72 S.Ct. 555, 96 L.Ed. 701 (1952).

[7] Nesbit and Wiltz cite to several cases to support their position. However, these cases are federal civil cases wherein the defendants used the McCarran-Ferguson Act to attack federal subject matter jurisdiction.  The court does not find these cases supportive and notes that courts have recognized a distinction between civil RICO actions and barring the United States government from bringing criminal prosecutions based on the mail fraud and conspiracy laws. See **U.S. v. Sylvanus,** 192 F.2d at 96; **American International Group, Inc. v. Brutoco Engineering and Construction, Inc.,**  234 Cal. App. 3d 749, 762, 285 Cal. Rptr 765, 773 (1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992); **Wexco Inc. v. IMC, Inc.,** 820 F.Supp. 194, 201 n.12 ( M.D. Pa. 1993).

and Twelve were improperly joined under Rule 8 of the Federal Rules of Criminal Procedure and on the basis that she would suffer substantial prejudice, as contemplated pursuant to Rule 14 of the Federal Rules of Criminal Procedure, if her case were not severed.  Wiltz's Motion to Sever is substantially the same as Nesbit's and also claims that Counts Seven, Eight, Eleven and Twelve were improperly joined under Rule 8, and that he would face prejudice as contemplated by Rule 14. Through his Motion to Sever,  R. Henderson moves to sever Count Eleven from his remaining charges under Rules 8 and 14.  Lastly, B. Henderson moves to sever Count Twelve from his remaining counts under Rules 8 and 14 of the Federal Rules of Criminal Procedure.  Defendants argue that these particular counts, although involving some of the same defendants named in the conspiracy counts, are wholly unrelated counts with no relationship to the purported conspiracy to defraud Hartford.  Thus, defendants argue that the joinder is improper.

In opposition, the Government asserts that the parties and counts in the indictment were properly joined pursuant to Rule 8.  The Government argues that the counts and defendants are logically connected as all of the counts arise out a common series of transactions, each involving AWF and each count has a logical relationship to the other.  The Government contends that all charges are connected to the defendants' criminal association with each other and with AWF and their efforts to impede the investigation into their criminal activities.

Rule 8 of the Federal Rules of Criminal Procedure, provides, in pertinent part,

as follows:

> **(b) Joinder of Defendants**. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Defendants named in the same indictment should generally be tried together, particularly when they are allegedly members of a conspiracy.[8]  Joint trials play a vital role in the criminal justice system, as they promote efficiency and serve the interest of justice by avoiding the scandal and inequity of inconsistent verdicts.[9] Here, all but one defendant is alleged to have participated in the conspiracy and all of the acts alleged, including the act of the defendant not named in the conspiracy, are part of an overarching scheme to illegally obtain insurance proceeds from Hartford and to impede the investigation surrounding the payment of the insurance proceeds. Thus, joinder is clearly justified under Rule 8(b).

Alternatively, the defendants argue that they would suffer substantial prejudice as contemplated by Rule 14 of the Federal Rules of Criminal Procedure if severance is denied.  Rule 14(a) states, in pertinent part, as follows:

[i]f the joinder of offenses or defendants in an indictment, an

_____

[8] **United States v. Manges,** 110 F.3d 1162, 1174 (5th Cir. 1997), cert. denied, 523 U.S. 1106, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998).

[9] **Zafiro v. United States,** 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993).

> information, or a consolidation for trial appears to prejudice a defendant
> or the government, the court may order separate trials of counts, sever
> the defendants' trial, or provide any other relief that justice requires.

Severance is proper only when a defendant shows that "'there is a serious risk that a joint trial would compromise a special trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'"[10] The Fifth Circuit has noted that, "[n]either a quantitative disparity in the evidence nor a prejudicial spillover effect is sufficient in and of itself to warrant a severance.[11]

Considering the foregoing, the court finds that the charges against these defendants should be not severed.   Defendants have not presented any good reason for the court to believe that  a jury would be unable to separate the evidence that is relevant to each defendant, or that limiting jury instructions will not be sufficient to protect each defendant from the evidence admitted solely against his or her co-defendants. Additionally, defendants have not shown that they would suffer prejudice sufficient to warrant a severance.

Nesbit also filed a supplemental motion to sever wherein she asserts that there are two pending civil lawsuits filed by Wiltz which name her as a defendant and allege that she participated in the filing of forged documents.  Nesbit asserts that she

---

[10] **United States v. Nguyen,** 493 F.3d 613, 625 (5th Cir. 2007)(quoting **Zafiro v. U.S.,** 506 U.S. 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993))

[11] **United States v. Broussard**, 80 F.3d 1025, (5th Cir.), cert. denied, 519 U.S. 906, 117 S.Ct. 264, 136 L.Ed.2d 189 (1996).

believes that one of the lawsuits involves a $200,000 loan purportedly made to Brett Henderson which appears to involve the same check mentioned in Count 8 of the Indictment.   Nesbit argues that if the government introduces either or both petitions at trial, the references to her supposed participation in forgery and filing false documents would constitute other crimes evidence of extremely dubious admissibility and of which the government has provided no notice under Rule 404(B) of the Federal Rules of Evidence.   Nesbit also argues that she will have no way of exercising her right to confront her accuser, Wiltz, regarding these allegations if he elects not to take the stand.   Nesbit further argues that the lawsuit involving the transaction seeks to make Nesbit a part of that transaction and is in direct conflict with the core of her defense.   Nesbit asserts that in order to believe her claim of the absence of knowledge or participation in the $200,000 loan to Brett Henderson, the jury would have to disbelieve the claim in the petition and any testimony by Wiltz that she was part and parcel of an attempt to defraud him out of repayment of that very loan.

In **Zafiro,** the Supreme Court expressly rejected the argument that severance is mandated "whenever co-defendants have conflicting defenses."[12]   To warrant severance, the defenses must be antagonistic.[13]   The "test for antagonistic defenses

---

[12] **Zafiro v. United States,** 506 U.S. at  538.

[13] **United States v. Rocha,** 916 F.2d 219, 231 (5th Cir. 1990), cert. denied, 500 U.S. 934, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991).

requires that the defenses be irreconcilable or mutually exclusive: the jury, in order to believe one defendant's defense, must necessarily disbelieve the antagonistic defense of another defendant. In other words, the core of one defendant's defense must be contradicted by a co-defendant's defense."[14]   Defendant Nesbit has not established that her defenses are actually antagonistic to Wiltz.  In fact, Nesbit is not charged in Count Eight of the Indictment which involves the $200,000 check.  Nesbit is charged in Count 3 with conspiracy to defraud the Hartford Insurance Company. The court finds that Nesbit and Wiltz's defenses are not mutually exclusive, as required by the test, as Nesbit is not charged in Count Eight of the Indictment which involves the $200,000 loan and check.  Thus, Nesbit has not made a sufficient showing that severance is warranted to due to antagonistic defenses.  The guilt of her co-defendants is not at the core of her own claim of innocence.

## CONCLUSION

For the foregoing reasons,

IT IS ORDERED that defendants' Motions in Limine to Exclude Testimonial Hearsay Statements of Alleged Co-conspirators (Doc. Nos. 53 and 60) are hereby DENIED.

IT IS FURTHER ORDERED that defendants' Motions to Dismiss Count Three (Doc. Nos. 55 and 65) are hereby DENIED.

---

[14] **Rocha,** 916 F.2d at 231.

IT IS FURTHER ORDERED that defendants' Motions to Sever (Doc. Nos. 56, 63, 66, and 71) and Supplemental Motion to Sever (Doc. No. 117) are hereby DENIED.

Baton Rouge, Louisiana, this 2nd day of December, 2010.

RALPH E. TYSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

Doc#1877                                    14